# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

DYLAN CHRISTOPHER TRECKER,   )
   )
            Plaintiff,   )
   )
v.   )   **No. CIV 17-276-RAW-SPS**
   )
CHAZZLYN KALINCH,   )
a.k.a. Chazzlyn Kalinich,   )
and JAMES YATES,   )
   )
            Defendants.   )

## OPINION AND ORDER

Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary, brings this action under the authority of 42 U.S.C. § 1983. He is seeking relief for alleged constitutional violations during his incarceration at Davis Correctional Facility (DCF), a private prison in Holdenville, Oklahoma. The defendants are DCF Correctional Officer Chazzlyn Kalinch, a.k.a. Chazzlyn Kalinich, and DCF Warden James Yates. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), a special report prepared by DCF officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 21), and Defendants' motion for summary judgment (Dkt. 26). Plaintiff has not filed a response to the motion.

Plaintiff alleges Defendant Kalinich escorted him from his housing unit to medical for an examination after Plaintiff was sprayed with OC spray. Following the exam, Plaintiff and his cellmate, Darrell Whitaker, were taken to the maximum security segregation building. Whitaker and Plaintiff were placed in separate strip-out cages, and padlocks were used to secure the cages. Mechanical restraints also were applied for the safety and security of the facility. Officers escorted Whitaker to Cell 114, where they stripped him of his clothing and

belongings.  He was left with a just a mattress in an empty cell.  (Dkt. 1 at 4).

When Officers told Plaintiff he would be placed in Cell 113, he asked to speak to a supervisor, because he felt his life was in danger and he could not go into that cell. Defendant Kalinich said, "You can get dealt with we aren't playing that bullshit today." Kalinich then stood at the cage and harassed Plaintiff by calling him "punks" and "bitches" and saying he (Kalinich) had been waiting to beat on him.  Plaintiff had "shouldered" the cage when the padlock was secured in an attempt to get another officer's attention.  *Id.*

Approximately one or two minutes later, Defendant Kalinich opened the cage door, and Plaintiff went to the back of the enclosure.  Kalich then delivered multiple blows to Plaintiff's head while Plaintiff was restrained by handcuffs, until Plaintiff was bleeding and unconscious.  Captain Gloria stopped the assault by telling Kalich that was enough.  *Id.* at 4-5.

Plaintiff was seen immediately in medical and then was transported to an emergency room in Holdenville, where he received seven staples in the right side of his head above his ear. Upon returning to the prison, he was housed in the main medical area.  He claims he experienced nerve pain in the left side of his jaw and head and could not eat because of the pain in his jaw.  *Id*. at 5.

After 48 hours of observation, Plaintiff was returned to segregation where he began the grievance process regarding excessive force.  He received ibuprofen for his pain.  He wrote a sick call for dental services, because of the bruising under his jaw and in his face. The dentist referred him to a clinic in Oklahoma City, and he was transported there.  He was diagnosed with severe bruising and pulled muscles in his jaw.  *Id.* at 5-6.

Plaintiff further alleges officers provoked, harassed, and retaliated against him for having filed paperwork about the incident.  He was fed sack lunches for 25 days and claims

he was deprived of proper nutrition, as evidenced by his 14-pound weight loss while eating the restricted meals. He claims he was afraid to leave his cell because of the officers' threats, and he suffered severe mental trauma and emotional distress. His request to transfer to another facility was denied. He also complains that the same person who responded to his Request to Staff reviewed cameras with the reviewing authority, which he "feel[s] is not right." Finally, Plaintiff alleges Warden Yates is listed as a defendant because Yates watched a recording of the incident, allowed the incident to occur, and failed to attempt to correct the officer's misconduct. *Id*. at 6-7.

## Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Exhaustion of Administrative Remedies

Defendants allege, among other things, that Plaintiff has failed to exhaust the

administrative remedies for any issue other than his claim of excessive force occurring on March 22, 2017.  While Plaintiff outlines an Eighth Amendment excessive force claim, he also asserts he was retaliated against and harassed for filing grievances after the incident, and he was provided sack lunches instead of a regular food tray.  He, however, did not file grievances about those issues.

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

Terry Underwood, DCF Grievance Coordinator, states by affidavit that at all times relevant to this action, an administrative remedies grievance policy was available for inmates at the facility.  DCF utilizes Oklahoma DOC administrative remedies grievance policy OP-090124.  (Dkt. 26-5 at 3).

According to OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident.  If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form.  If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS.  If

the complaint is not resolved after the response to the RTS, the offender then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Medical ARA. The administrative process is exhausted only after all of these steps have been taken. (Dkt. 26-6).

The record shows Plaintiff submitted only one grievance at DCF, No. 2017-0065-G. The grievance concerned the alleged excessive force and cruel and unusual punishment in the March 22, 2017, incident. Plaintiff's request for relief in the grievance was for further review of the use of force, to hold officers accountable, and to "take this to a higher level" for legal matters. After Plaintiff's resubmitted the grievance for procedural issues, the facility head responded to the grievance and granted relief in that the incident had been further investigated and reviewed. The incident was investigated by Marty Garrison, DCF Facility Investigator, and it was determined that the use of force used on Plaintiff was not excessive. Plaintiff appealed the facility head's decision to the ARA, however, the appeal was returned because the requested relief had been granted. (Dkts. 26-5 at 3; 26-7).

For the above reasons, the Court finds Plaintiff did not exhaust the available administrative remedies for his claims concerning retaliation and harassment for filing a grievance or his claim regarding the sack lunches. Summary judgment is appropriate for these claims because of Plaintiff's failure to exhaust. *See* Fed. R. Civ. P. 56(a).

**Excessive Force Claim**

According to the facility Incident Report, on Wednesday, March 22, 2017, at approximately 5:19 p.m., Correctional Officer Fedasko was picking up meal trays on the Echo Bravo housing unit following distribution of the evening meal, when he heard loud banging noises coming from the direction of cell 122. That cell was assigned to Plaintiff and Inmate Darrell Whitaker. The officer observed Plaintiff repeatedly striking the back window

with a food tray. Officer Fedasko gave Plaintiff verbal directives to stop striking the back window and warned that failure to comply would result in the use of chemical force. Plaintiff, however, refused to comply with directives and continued to strike the back window with the food tray. (Dkt. 26-2 at 1).

Officer Fedasko next administered a short burst of oleoresin capsicum (OC), via the cell door food port, directed at and making contact with Plaintiff's upper torso/head region. Plaintiff then complied with directives and stopped striking the cell window. The officer gave both inmates a direct order to submit to hand restraints, they complied, and he applied hand restraints to each inmate. The officer also radioed for an emergency response team to respond to Echo Bravo. *Id.*

An emergency response team consisting of four officers responded to the housing unit within one minute. Defendant Kalinich was a member of the team. The door to cell 122 was opened, and the response team entered the cell and placed additional restraints on Plaintiff and Whitaker. Kalinich placed the leg restraints on Inmate Whitaker. (Dkts. 26-2 at 2; 26-3 at ¶ 3, Affidavit of Chazzlyn Kalinich).

Inmate Whitaker was cleared for segregation placement and escorted from the satellite medical clinic to Fox Bravo, where he was re-housed in cell 114. All restraints were removed from him without further incident. Inmate Whitaker refused decontamination and opted to self-decontaminate in the cell. There were no problems with Inmate Whitaker. (Dkt. 26-2 at 2; 26-3 at ¶ 5).

Plaintiff was escorted by other officers from Echo Bravo to the satellite medical clinic where he received a medical evaluation with no injuries noted. Plaintiff was cleared for segregation placement and was escorted by officers from the medical clinic to a holding enclosure located in Fox Bravo, until an available cell could be located. Plaintiff also refused

decontamination. (Dkts. 26-2; 26-3 at ¶ 5.)

Once available placement for Plaintiff was determined, Officers Kalinich and Allen went to the holding cell enclosure to escort Plaintiff from the enclosure to cell 113. When the door to the enclosure was opened, Plaintiff unsuccessfully attempted to strike Officers Kalinich and Allen and retreated back into the cell. (Dkts. 26-2 at 2-3; 26-3 at ¶¶ 6-8).

When Plaintiff failed to comply with orders by Officer Kalinich and Allen, the officers attempted to remove him from the holding cell. Plaintiff then attempted to assault the officers. In response, Officer Kalinich delivered two knee strikes to Plaintiff to try to stop him. When Plaintiff bent down to avoid the knee strikes, the knee strikes hit him in the upper torso and facial area. Officer Kalinich secured Plaintiff's left extremity, and Officer Allen secured the right extremity, and in unison they placed Plaintiff on the floor area in a prone position to gain compliance. (Dkts. 26-2 at 3; 26-3 at 26-3 at ¶¶ 8-9).

Two other corrections officers then took control of Plaintiff and escorted him from Fox Bravo to the Fox Unit medical office. There, he received a second medical evaluation. Plaintiff was found to have injuries in the form of "skin flaps/swollen area to both sides of head." The facility medical staff determined Plaintiff should be taken to Holdenville General Hospital for evaluation and treatment. At the hospital, Plaintiff received seven sutures to the right side of his head. It also was determined that he had sustained a concussion. Plaintiff was returned to the prison facility that same evening at approximately 7:45 p.m. and was housed in the facility's medical clinic for medical observation without further incident. (Dkt. 26-2 at 3).

The use of excessive force by a correctional officer violates a prisoner's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause when the prisoner is subjected to the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S.

312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

> Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Ibid*. . . .

*Hudson*, 503 U.S. at 7.

"[A]n excessive force claim involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Giron v. Corr. Corp. of America*, 191 F.3d 1281, 1289 (10th Cir. 1999). An official has a culpable state of mind if he uses force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320-21. "To determine whether prison officials applied force maliciously and sadistically or, rather, in good faith, the Court considers (1) the need for the force, and (2) whether the officers used a disproportionate amount of force." *Redmond v. Crowther*, 882 F.3d 927, 937 (10th Cir. 2018) (citing *Whitley*, 475 U.S. at 321)).

Defendants maintain there is no evidence that the responsive measures used by Officer Kalinich were done in a malicious and sadistic manner for the very purpose of causing harm.

Officer Kalinich states by affidavit that he used only two knee strikes, and this was necessary because Plaintiff was not complying with orders and was attempting to assault Kalinich and Officer Allen. (Dkt. 26-3 at ¶ 10).

Unit Manager Ernesto Martinez reviewed the closed-circuit facility video associated with the complained-of incident. According to Martinez, the video shows that when officers were removing Plaintiff from a holding enclosure, Plaintiff attempted to hit the officers with his head and with his knees. Plaintiff was given several orders by the officers to come out of the holding cell, but he refused to comply. In response, Officer Kalinich delivered two knee strikes to stop Plaintiff's attempts to assault the officers. Martinez further states in his affidavit that the video also shows that as Kalinich acted, it appeared that Plaintiff knelt down in an effort to avoid the officer's knee strikes, resulting Kalinich's knee strikes hitting Plaintiff in his upper torso and facial area. (Dkt. 26-4 at ¶ 4-5, Affidavit of Unit Manager Martinez).

Defendants maintain Defendant Kalinich used the correct amount of force to protect himself and to control the situation. (Dkt. 26-3 at ¶ 10). Unit Manager Martinez concluded the force used was not excessive. (Dkt. 26-4 at ¶ 8). The video also was reviewed by Chief of Security Kevin Brown and Facility Investigator Marty Garrison. They concluded the officers involved used the correct amount of force to obtain control of Plaintiff and to protect themselves. (Dkt. 26-7 at 3, Grievance response dated April 17, 2017).

Defendants contend Defendant Kalinich's actions were in response to an actual confrontation with an inmate, and Kalinich did not act in bad faith. Instead, he made considered decisions in a good faith effort to restore control and to protect himself. The Court again notes that Plaintiff has not responded to Defendants' motion.

After careful consideration of the pleadings and other submitted materials in this case,

the Court concludes there is no genuine dispute as to any material fact regarding Plaintiff's excessive force claim against Defendant Officer Kalinch, and Defendant Kalinch is entitled to judgment as a matter of law. Plaintiff refused to obey orders and was aggressive toward the officers. Defendant Kalinch's actions were objectively reasonable and were made in a good faith effort to restore discipline. Therefore, summary judgment is appropriate.

**Defendant Warden Yates**

Plaintiff also has named Warden Yates as a defendant in this action. A review of the complaint, however, shows Plaintiff has made no specific allegation of personal participation against Yates. Instead, Plaintiff merely asserts Yates "witnessed incident by reviewing cameras and let the illegal misconduct occur and failed to even attempt to correct that misconduct." (Dkt. 1 at 7).

> Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992). "[S]upervisory liability requires 'allegations of personal direction or of actual knowledge and acquiescence.'" *Id*. at 1400 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)).

*Langley v. Adams County*, 987 F.2d 1473, 1481 (10th Cir. 1983).

Supervisory liability under § 1983 may not be premised upon a theory of respondeat superior. *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). To succeed on a supervisory liability theory, a plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Booker*, 745 F.3d at 435 (quoting *Schneider*, 717 F.3d at 767). To demonstrate that link, "three elements [are] required to establish a successful § 1983 claim against a defendant based upon his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind." *Schneider*, 717 F.3d at 767.

Here, Plaintiff has made no allegation that Warden Yates was present or otherwise personally involved during the incident of March 22, 2017. Instead, Plaintiff has merely asserted that Yates is the warden. Further, a review of the record indicates there are no facts showing Warden Yates had any involvement with the situation on March 22, 2017.

Plaintiff does assert Yates denied the relief requested in Plaintiff's grievance concerning the March 22, 2017, incident. The denial of a grievance, however, "without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Here, the Court finds Plaintiff has not made a showing that Defendant Yates personally participated in the incident at issue, or that Yates did anything other than act as the reviewing authority for Plaintiff's grievance concerning the incident. There are no genuine issues of material fact on this claim. Therefore, Yates is entitled to summary judgment on this matter.

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 26) is GRANTED, and this action is DISMISSED in its entirety.

**IT IS SO ORDERED** this 30th day of September 2019.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

11